The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. We have first for argument two cases, number 19-2306, Caterpillar Inc. v. International Trade Commission, to be followed by number 19-2320, Wirtgen v. ITC. So we'll begin first with 19-2306 and hear from Mr. McCammon. Thank you, Your Honor. May it please the court. The commission erred when it found that a machine manufactured in Italy by an Italian company was sold in this country despite the fact that there was no evidence of any activity related to that sale in the U.S. The question of what constitutes a sale in this country for purposes of validity is directly analogous to what qualifies as a sale in the United States for the purposes of infringement. In the infringement context, this court has consistently acquired a probing inquiry to identify actual domestic activity for a sale to be considered in the United States. And in that inquiry, the nationality of the company has never been despised. In fact, in this court's decision in Texas Advanced Optoelectronics, which is discussed on page 21 of the blue brief, both companies involved in the sale were U.S. companies. The nationality of the companies did not dictate the location of the sale. Mr. McCammon, let me ask you a question. Suppose the sale for the title transfer took place in Italy, but that the machine was being sold for use in the United States. Do you agree that under those circumstances, the on-sale bar would apply? Not with that more information, Your Honor. Because with that hypothetical, all we know is that there was a sale in Italy and that title transfer took place in Italy. And perhaps the Italian company knew that it might be used in the United States. Wait, you're not accepting my hypothetical. My hypothetical is that while title transfer happened in Italy, the machine was sold to a U.S. company for use in the United States. Is that covered by the on-sale bar? No, I don't think so, Your Honor. And the reason for that is I think that with just that information, all we know about the activity related to the sale is that there was a sale. There was a title transfer in the U.S. And we don't know more about any activity the Italian company specifically directed to the United States. And so I think if we look at the parallels in the infringement context where perhaps a company for a foreign sale knows that a company or a product will eventually be used in the United States and later imported, that isn't enough to show a sale in the United States. And certainly there are other ways that that sale could come into play for validity. So if the machine was imported and actually used in the United States, that would be a potential public use that could bar patentability. If there was evidence of that use in the United States before the critical date, but just having the knowledge that the machine might be used in the United States, I don't think it's enough because you have to- You keep adding might to my hypothetical. I didn't say might. It was sold for use in the United States. Yes, Your Honor. I think my hesitation there is I don't know more information about what the parties did during the contracting process, where they negotiated, or what the activities of the Italian company were. And I think that it's important to know where the companies actually did their activity. And so the issue I'm having with the hypothetical is that the Italian company may expect and may know that the U.S. company will eventually import it and use it in the United States. But I think the inquiry of where the location of the sale took place has to ask where the activity related to the sale took place. And so that is why I think that the hypothetical that you proposed wouldn't fall under the on-sale bar because without more information showing that there was actual activity related to the sale directed to the United States, then it wouldn't qualify as a sale in the United States. And that's why I think it wouldn't qualify. Does that answer your question? Go ahead. And I think if we look to the infringement context, again, the parallels there show that in the infringement context, that type of activity doesn't qualify. I mentioned the Texas Advanced Optoelectronics case. In that case, both companies were U.S. companies. And they both had a U.S. address and communicated about the sale. And the accused product was actually integrated into the iPhone, which was sold to the United States. So in that case, there was certainly an expectation that there would be use in the United States. But that wasn't enough, even under the lower preponderance of the evidence standard, to show infringement. And so I think that since we're talking about the sale, we're talking – McCabe? Yes. McCabe, excuse me. This is Judge Shaw here. What I would like to ask you is this. Is it wrong or improper to infer from the facts that we have that there was a sale in the United States – well, now, let me back up. I'm sorry. To infer from the following hypothetical that there was a sale in the United States, assuming we have the bill of sale that we have here, and then we had, say, a month after that, the paper appearing in the United States, cannot one infer from that that there was a sale to the United States? I think with just that information, Your Honor, no, you can't. Because you have the bill of sale and, you know, let's say the facts are similar to this case, where the company has a U.S. address and the description of the item is in English and they're paid in U.S. dollars. The issue is that those facts that the commission relies on are just facts that indicate a U.S. company was involved. So any time that you deal with a U.S. company, they're going to have a U.S. address. Any time, in most cases, where you deal with a U.S. company, there's probably going to be English and there's probably going to be U.S. dollars used. But that doesn't show where the activity took place related to the sale. And, again, I turn back to the Texas Advance Optoelectronics case, because both companies were U.S. companies, would have that same sort of indicia of an American company being involved. Now, in your hypothetical, you've mentioned that the paper was found a month later in the United States. And I think that that kind of gets back to Judge Dyke's hypothetical a bit, too, which is that the paper being in the U.S. and later being found there is indicative that, of course, it was imported and perhaps there was a public use. And there's a separate provision covering public use that would bar patentability. But without evidence of public use, that provision wouldn't qualify. And I think it's improper to wrap up a later importation into a sale without more information about what the activity of the parties was at the time and whether that activity was actually directed to the United States, whether activity took place in the United States was directed there. Because it's certainly possible that a sale between a U.S. company and an Italian company, like we have here, took place entirely in Italy and that there was no activity in the United States or even directed to the United States. And just because… Mr. McKenna, this is Judge Hughes. Can I interrupt here again? I think this is tricky, and I'm sorry I'm going to burden you with some more hypotheticals, but I'm going to. Let's say first, you know, a U.S. citizen travels to Italy and buys some nice Italian shoes and takes them back. I assume you would say that obviously is not a U.S. sale, even though the goods are being taken back to the United States. It may be a use if they're used there, but it's not a foreign sale or it doesn't constitute a U.S. sale. Is that correct? That's correct. And then what about if the customer says, I really like these shoes when he's back in the United States and calls the Italian company and says, I'd like to buy another pair of those shoes. Can you send them to me? Is that a U.S. sale or is it not? In that case, General, I think it would be a U.S. sale. And I think, you know, there we have some of the factual underpinnings tying activity to the United States, which we see in some of the cases, like Enrique Vaini and Hamilton Beach products. But, you know, there has to be some evidence actually showing where something took place in the United States. There was activity in the United States. And I think you're into your rebuttable time, but I just want to try to pinpoint on what do you think the key dispositive fact there that turns that into a U.S. sale? Is it that the person making the offer for purchase is actually located in the United States? I think it's not that the person is located in the United States. I think that it is showing that there's some action by the seller that's directed to the customer's place of business or the customer in this case because they're actually directing activity into the United States by being on that call with them where the – you can think of it as telephone signals are being sent to the United States in that case, and they're actually conducting business with someone located there and directing activity there. How is that different from this situation because there was no telephone call? The difference, Your Honor, is that we just don't have any information about where anything took place in this case. And it's just a void of information. All we really know is that – Well, no, but you – in Judge Hughes' hypothetical, you said that was a sale in the United States. What's different from this case to the hypothetical? In this case, we don't know anything about the parties' interactions related to the sale. We don't know what the business practices were. We don't know who talked to who, when, or where. We don't know anything related to the sale other than that there is an invoice with a U.S. address that used English and that later, we don't know when, 20 years later is all we know, the company was found in the United States. And that's the issue is that there's just no evidence where anything – So can I just clarify – can I just clarify one more time because I think I hear what you're saying? But is the difference that you're at least assuming my hypothetical assumes that since the buyer is U.S. and he wants the shoe shipped to the U.S., that it's a sale back to him in the U.S.? And what you don't have here is an invoice suggesting that the machine should be shipped to the United States after purchase. If that invoice that we have showed not just that it was sold to a U.S. customer or paid for in dollars and all of that, but also was to be shipped back to the Stockton, California address, would that be enough for the on-sale bar? I think, Your Honor, that probably would be. And we probably wouldn't be having a conversation right now. And the issue is the invoice shows the opposite. It shows it was delivered in Italy. And so all we know is that there was a company that manufactured and delivered a machine in Italy. We have no other information. And that's really the difference between your hypothetical and the case we have here. Thank you. Unless my colleagues have further questions, Mr. McCannon, I think we're done. We'll give you two minutes for rebuttal. Thank you, Your Honor. We'll hear from Ms. Borad. Good morning, Your Honor. May it please the Court. I would like to first address the hypotheticals. And I want to say that under this Court's precedent, Life Tubes, Hamilton, Cabinet, whether it's under Section 271 or under Section 102B, a sale occurs also at the location of the buyer. And here, the Commission has substantial evidence to support its determination. The Commission relied on failed documents showing that two Bicelli machines were sold to a customer located in the United States. So the Commission did not just rely on the citizenship of the buyer, as Caterpillar suggests. It considered the location of the buyer in the United States, an invoice to that buyer, which included… But how is that dispositive of whether a sale occurred in the U.S.? I'm going to ask you. I'm sorry for all these hypotheticals, but this is kind of, to me, a little bit difficult. I want to test the boundaries. Let's say you have a U.S. company and a foreign company. And the U.S. company is purchasing an item, but it's always intended to be delivered outside the U.S. So here, they buy it, and then they, you know, are purchasing it on behalf of somebody else. And they deliver it immediately from Italy to Germany, say. And so it's not intended to be used in the United States. The only connection is that an American company purchased it. But it was never – and it was purchased from the foreign company. Is that on sale in the United States? Well, the case law makes clear, Your Honor, that delivery is not relevant at all. Because a commercial offer for sale… So is your answer to my hypothetical yes, that it's a sale in the United States, even if… It would still be yes. Well, how is that different from my hypothetical that a U.S. traveler goes to Italy and buys a pair of shoes in Italy and brings them home? That's not an on sale in the United States, is it? If the customer is in Italy purchasing the item in Italy, I would agree with you that that would not be a sale in the United States. But that's not the fact here. The fact here is that the sale was directed… Sorry, can you – when I – I know this is hard over the phone, but I'm – and you don't have much time. I want to play two hypotheticals. What if the customer – I don't understand why the customer's location is dispositive of where the sale occurred. Suppose the customer bought these foreign – liked these foreign shoes enough. And when he was back in the United States, says, I really like these, and calls up the Italy company and says, I want you to send a pair of these shoes to my friend in England. Is that on sale in the United States? These one or two cases are very factual. Can you just answer yes or no first? Those are not the facts here. The invoice shows that it's a sale. Please answer the hypothetical. So if the – it depends on the records, Your Honor, because if the invoice, for example, is – if there is like an invoice… Stop, stop, stop, stop. Sorry. Listen to the hypothetical. I'm not asking about this case. I'm not asking about the record. I'm asking the hypothetical. We already established a person goes to Italy and buys the shoes there and brings them back is not on sale in the United States. The hypothetical is that same person calls up the Italian company, buys a pair, and says, send them to my friend in London because he'll like them too. Is that on sale in the United States just because the purchaser is a United States resident? I would believe so, Your Honor, because that's the sale between – even though the delivery is in England, it's still a sale between the company – the foreign seller and a U.S. customer that is located in the United States and makes the purchase from the United States. So I would think the one through B would still apply in that case. Well, I wonder whether it depends on whether the title in that hypothetical, whether the title passes in the United States or abroad because we have this Aguayo case – I'm mispronouncing it – in the Southern District of Texas, which involved the sale of a product for use in Canada, but the district court found that the sale itself took place in the United States. And to what extent does the outcome of these cases depend on where the title passes? If title passes in the United States, even though it's for use abroad, under that case, that would be covered by the on-sale bar. So in Judge Hughes' hypothetical, as I understand it, the title passes not in the United States but abroad. If I may answer, I think the Lightcube case is directly relevant to this issue because in that case, the sale was made free on board from Canada. And the party tried to make the same argument that the sale was actually consummated in Canada because the products were shipped free on board. And the court rejected that and expressly stated that the sale also occurs at the location of the buyer. And so based on that, and it was under 271, the court found that there was a sale in this country. Okay. Unless one of my colleagues has further questions for Ms. Morad, we'll move on to Ms. Barry-Chopra. Are there any further questions for Ms. Morad? No. No. Hearing none. Okay. Mr. Jopra. Good morning. May it please the court. I think it's important to recognize that the ALJ made a specific factual finding on this point, which can be found at Appendix 118, which is that there is evidence of a commercial activity directed to the United States. And so I would go back to the fact that this is a question of substantial evidence at the end of the day. And it's substantial evidence that is actually stronger than other instances in which this court has found that the on-sale bar has been triggered. So if you look at the Hamilton Beach case that this court – I'm sorry. Can I just jump in? Sure. Is there any evidence of where title passed in this case? No, Your Honor. It does seem dispositive here in some sense. We seem to be having a lot of background noise. What is that coming from? Okay. Go ahead. It sounds like it's coming from Mr. Jopra's line. I apologize. I'll try to stay as quiet as possible. Thank you. Go ahead. I apologize. That's okay. If you're moving around or something, that sometimes causes it. But let me just ask. If there's no evidence of where title passed, then the substantial evidence we have, I think, is pretty undisputed, that there were machines sold to a customer. The address listed was a U.S. company. The product was described in English, and the payment was in U.S. dollars. And then a long time after the fact, one of the machines was found in the United States. I have a hard time understanding how that substantial evidence is sufficient to meet the clear and convincing burden here without showing that the sale was actually directed to the United States, particularly when it was delivered to someplace outside the United States. I would answer that there was similar facts present in Hamilton Beach. For example, in Hamilton Beach, there was a purchase order that listed a U.S. address. The purchase order, for example, had number of units, part numbers, unit price, all the same things that are found on the purchase order in this case. And this court found that that was sufficient to trigger the on-sale bar because that was an offer for sale. Similarly, here, we have evidence that the... But, you know, we're talking about, you're talking about all these cases, and they all have different facts. Can we just talk about the law as applied to the facts of this case? We're not talking about an offer for sale here. We're talking about an actual sale, aren't we? Yes, we are. And that should be stronger, Your Honor, than just an offer for sale. Because here, it's undisputed that there was both an offer and an acceptance. And the acceptance was by a United States corporation in California. And so, therefore, it... Is your position the same as... Wait a moment. What is the... Mr. Joffrey, what is that background noise? Can we stop that? I apologize. I don't... I'm not shuffling papers or anything, Your Honor, so I'm not sure what the background noise is caused by. Are you on headphones with a cord? I am, yes, Your Honor. You've got to be still because those cords make a lot of noise if you move around. Oh. All right. I will try to stay as still as possible, Your Honor. Mr. Joffrey, this is Patrick Chestnut, the courtroom deputy. When a judge is speaking, if you could mute your line locally, that would help. Okay. I will do so. Thank you. Okay. I'm sorry to... Let me just try to dive right back in. Do you agree with your friend from the ITC that a U.S. citizen making the purchase seems to be dispositive? Because that seemed to be what she was saying. I would say, Your Honor, that the court has addressed this. So I agree that it is quite strong evidence, but the court has addressed this in Kaveny and Hamilton Beach and others in saying that a... and saying, send a pair of shoes to my friend in Italy. Is that a U.S. sale or not? No, and the reason it's not a U.S. sale is because there's no expectation that anyone has that this sale was meant to be for Italy, that it was directed... I'm sorry, that it was directed to the United States, meant for the United States otherwise. It was clearly directed at Italy, and that is the difference between this case. There's no evidence, for example, that anything happened in Italy other than the purchase was sent, an order was provided, that the machine was made, and then the sale was to this United States company. What's the evidence that it was intended for the United States, particularly when it was delivered abroad? It's the same evidence that's found in Hamilton Beach, that it is the listing of an address of a United States customer, listing in English, with dollars as the currency, with a customs number. Those are all strong evidence that it is meant directed to the United States, and Caterpillar, as the actual seller of this, the party with the records in this case, could have come forward with other evidence, but they did not, and so all the evidence points one way. Okay, and lots of further questions for Mr. Joffrey. Hearing none, we'll hear from Mr. McCammon. You have two minutes. Thank you, Your Honors. So, because the work in Ray's Hamilton Beach quite a bit, I would like to point out that I think that it's quite distinct from the facts here. In Hamilton Beach, you had a party, and there was ample evidence of where they were negotiating things, that the company was in the United States, it was negotiating with a foreign company from the United States, it had requested a purchase order to the United States, there was correspondence in emails that were sent from the United States, there was actual evidence of where activity took place. We simply don't have that here, and I think that, Your Honors, hypotheticals are poignant because the only thing we know is that there is a machine that was delivered in Italy, and we don't know anything else about it. And without anything more, it simply boils down to whether it's not that a U.S. company was involved. And I would say, you know, if you look in Morgan's brief, they recognize that and say that controlling law dictates that if a product is sold to a U.S. company, it's the one to be sold. And that's what they've had to fall back on because there is no evidence of any activity in the United States. Why can't you infer from these facts that the sale was for use in the United States? There's no evidence that the purchaser has any Italian activity or business in Italy. Why aren't the facts sufficient to make that kind of inference? Your Honor, I think that because we don't have any facts of what actually took place in the United States or that there was a direction in the United States. And I think that this is really no different than Judge Hughes's hypothetical with the shoes being sold in Italy because if they brought in a person… Well, it's quite different because there, there was evidence that the shoes were going to be transferred to somebody in England. There's no evidence here that this machine was going to be sent anywhere other than to the United States. The question is, can you infer from the fact that that is what was going to happen, that is, to be sent to the United States? Yes, Your Honor. In this issue, I was actually thinking of Judge Hughes's first hypothetical where the customer goes to Italy and purchases the shoes. And the issue is that even in that sale where it takes place entirely abroad, there could be a purchase order where they describe the items in English and they pay in U.S. dollars. But even though it takes place entirely outside of the United States, that we would have the same facts that we have here. And there's simply no indication of where, when things were directed to the United States, when it came into the United States, and certainly nothing about the telly's practices or the customer's practices and where that could be happening related to the sale. Okay. Any further questions? All right. Thank you, Mr. McCammon. Thank you, Your Honor. The case is submitted, and we'll turn to the second of these cases, number 19-2320, work skin versus IPC. And I guess here first we hear from Mr. Joffrey. Okay. We'll hear argument next in number 19-2320, work skin versus International Trade Commission. Mr. Joffrey. May it please the Court. When Congress amended section 337 to allow complainants to meet the domestic industry requirement by proving that there was an industry in the process of being established, it specifically had in mind the scenario where, quote, a new product is developed in the United States which is protected by a U.S. intellectual property right, end quote. Congress created that provision so that, quote, the owner of the intellectual property right would not have to wait to bring an action under section 337 until he can satisfy the definition of an industry. That is precisely the situation that Caterpillar was in when it filed its complaint. It had developed a prototype for the machine. It was preparing to sell that machine, but it had not done so yet. Therefore, Caterpillar did not yet have an existing industry in the machine. It was only in the process of establishing one. But due to Caterpillar's failures during discovery, it was barred from demonstrating that its industry was in the process of being established. Rather, it had to demonstrate an existing industry in that machine. The commission erred in holding there was one because it… Why can't you have an existing industry as a result of, say, constructing a plant even though the plant hasn't made any sales yet? Because that is the definition of you're in the process of trying to establish one, Your Honor, rather than there actually being one. The building of a plant that essentially generates no income simply cannot be established. Now, to be fair, those dollars could all count in the process of being established. Congress wanted to make sure that that was possible, and that's why it created the statute the way it did and made that distinction. The problem, of course, for Caterpillar is it was barred from attempting to show that it was in the process of trying to establish an industry through its prototypes and the dollars that it spent. Therefore, based upon that problem, they simply cannot show a domestic industry in this case. Now, the distinction that the commission wants to draw or claims that it's drawing actually just collapses the two, the difference between an industry in the process of being established versus being established. They don't draw any distinction. There's no analytical work being done by that distinction. That must be done because the statute is written the way it is. Indeed, when the commission goes about trying to determine whether or not an industry is in the process of being established, it uses the same exact test as it does when it is trying to figure out whether or not the industry is established or not. Namely, what it does is it goes through all of the different prongs that are found in paragraph A3 and asks whether there's a significant investment in plants, labor, or in the exploitation of patent through research and development licensing. And so it's not simply a hypothetical collapse of these two prongs of the statute into one. It is an actual one. They truly do not distinguish them in actual practice, and that is error because as the dictionaries, as the clear import of the language shows, there has to be a difference between an industry and a non-industry. Another way of saying that is that if we went back to paragraph A2, Congress could have said, for example, that there's domestic industry if there is some activity in the United States or that there is some actions by people in the United States. It didn't use those words. It didn't use activity or otherwise. Rather, it used the word industry. And therefore, that term ought to be given an actual concrete definition, and that actually ought to apply here. Now, turning to the – unless the court has further questions about 337, I will turn to the question of the Boozley patent and how it was ignored by the – the expert evidence was ignored by the commission in determining that the claim 19 was not obvious. It's important to understand that in road milling machines, when you swing that back leg of the road milling machine, you actually have to steer that back wheel. You have to keep pointing it forward. Otherwise, what happens when you swing the leg out is you'll drag it. You'll drag the wheel if you don't point it. And the prior art patent, Boozley demonstrates exactly how that steering should be done. The commission, however, said that – and ignored the fact that there was a reason to use the Boozley patent because it said that the response expert did not explain why or how the Boozley embodiments would be an improvement relative to actuators to overage. That is simply not true, and it ignores the evidence that Perkins' expert put into the record. What evidence is there in the record that it would have been advantageous to use the Boozley steering method as opposed to the old steering method or why it was necessary to use the Boozley steering method instead of the old method? I looked at the evidence that you submitted, and I just don't see where your evidence says that. An example of the evidence can be found at Appendix A1354 in the record. And this is the questioning and answer of Mr. Arnold, which at question 236, the question is why would you have used it or why was there a reasonable expectation of success? Namely, the problem with Ulrich was that there were no lifting columns, and so therefore you couldn't just simply use the actuators in Ulrich to steer that back wheel. So then the question is, well, how would one do that? And the answer, as pointed out by Mr. Arnold, is you'd use the Boozley steering mechanism because Boozley is integrated into a machine that has these lifting columns. And he explained in detail how you'd actually do that. So as to the why, if we can go to page 1360 at questions 253, he explained in detail exactly how you would combine Ulrich with Boozley and Volpe in order to have a steering mechanism that uses the lifting column. Specifically, he even described exactly how and what actuator in Ulrich would rotate that lifting column. But the question doesn't describe the how, and I don't understand there to be an issue about the how. What's missing, apparently, is the why. I think, Your Honor, that the Commission specifically said that there was no discussion in their explanation of how in Appendix 42. So I think there actually is a dispute over that question. But second off, as to the why, that can be found by Mr. Arnold explaining the reason you need to combine this Boozley is because the Ulrich does not have a lifting column. And so you don't know how to steer with a lifting column if you don't have the Boozley patented method. And so that is the why for why the Boozley patent is necessary. I see that I've run into my rebuttal time, Your Honor. Okay, unless there are further questions, I'll give you two minutes for rebuttal. Why don't you put yourself on mute because you're still getting a lot of noise from me. Thank you. Okay, thank you. Ms. Morad? Thank you, Your Honor. May it please the Court. As to the domestic industry issue, there is just no support. In the language of Section 327, the legislative history, this Court's precedent or Commission's precedent for Worgen's argument that commercial sale or availability for sale is required for an existing domestic industry. There's no dispute that at the time of the complaint, Caterpillar had an article protected by the patent and that they established significant employment of labor or capital and substantial investment in the exploitation of the patent. That is what the statute requires and that is how the statute defines a domestic industry that exists. Caterpillar has a complete machine incorporating the features of the patent before the complaint was filed. The machine was being tested by customers and was displayed at a trade show in Las Vegas. In addition, at the time of the complaint, Caterpillar had made significant investments relating to the machine at Caterpillar's facility in Minnesota and Peoria, Illinois. There is a clear distinction between an industry that exists and an industry that is in the process of being established. A different test applies for an industry that is in the process of being established. Under that test, complainants need to show that they are likely to establish in the future and not at the time of the complaint both the article requirement and the relevant statutory investment. As to the invalidity of Claim 19, substantial evidence supports the Commission's determination that Word can fail to show clearly and convincingly that Claim 19 is invalid over the combination of three prior art references, Vault, Ulrich, and Buffet. None of these references discloses a road milling machine with a wheel and a lifting column that are both steerable and pivotable, and wherein rotating the wheel includes rotating the lifting column. Word can rely on hindsight and uses the claim language and the specification of the asserted patent as a roadmap to construct their obviousness argument. That is impermissible under this court's precedent. Word can does not even acknowledge the substantial evidence standard for review of the Commission's factual findings. The Commission did not find Word can's expert testimony to be non-existent. It found the testimony to be conclusory. Both the Commission and the ALJ addressed that testimony, for example, at Appendix 39-43 and Appendix 139-140, and found no credible motivation to combine Buffet's steering mechanism with the Vault machine and Ulrich. And both the Commission and the ALJ credited Caterpillar's expert testimony over Word can's and concluded that there was no motivation to combine the three references and that the three references teach away from the combination because it would produce an inoperative device. Thank you, Your Honor. Any questions? Ms. Barad, this is Judge Hughes. I don't have a question for you about this case, but I just wanted to apologize for getting testy with you in the last case. These telephone arguments are hard, and particularly when time is really short, it's very hard to get counsel to stop talking when the judges start. It's why I wish we were doing the video instead of just telephone like most of the other circuits are doing. But again, I'm sorry for being testy last time. I know you were just trying to do your best. Thank you very much. All right. We'll hear from Mr. McCammon. Thank you, Your Honors. I'd like to start with the obviousness arguments that Worken raised. And specifically, I'd like to correct one thing, which I think is inconsistent with the record. Worken argued in their argument that one of skill in the art would not be able to rotate or steer the track of their combination machine without Bussley, but that's not consistent with their expert testimony or the findings in this case. Their expert at appendix page 1320 actually argued that that limitation was met based on the Ulrich reference and that Bussley was not required, and said that Ulrich disclosed that. So the machine that they proposed, the pirate machine, they said already got this. It already rotated the track and already could steer. And the commissioner relied on that and actually invalidated claim one, which includes the rotating track without the Bussley reference. So it's appendix page 31, the commission invalidated claim one. And so what was lacking, and I think Your Honors pointed this out, is a description of why. Why would one of skill in the art modify the machine based on the Bussley reference when the machine could already steer and the evidence they put forward was it could already steer, especially given the machine in Ulrich was so different and it was directed or when the machine in Bussley was so different, it was directed to machines and wheels that could not pivot. The teaching away part of what the commission said is difficult to support, right? I mean, I'm not talking about the motivation. I'm talking about the suggestion that was just somehow a teaching away here. That sounds like an argument that you'd have to have bodily incorporation, which is not the law. Your Honor, no, I don't think in this context it is difficult to square because you have to look at how the Bussley reference actually functions and the way it operated was via a machine where the front legs were linked and they were specifically designed so they could steer together. And because they were steered together, they had to maintain a fixed distance apart and not move apart. And so the distance between them was fixed and the machine could not swing those legs. And in contrast, the claims of the 693 patent are directed specifically to a leg that can swing in and out. And so when you are faced with a machine that is not operative for the purpose that the defendant is applying it to, the case law says that that can be seen as a teaching away. And here there was evidence from Caterpillar's experts discussing this inconsistency, which Working's expert never addressed, and the fact that if you tried to operate the Bussley reference in a machine where the legs could swing in and out, which is required by the claim, it wouldn't work. And so in that context where you have a machine that would be operative if proposed like Working argued, then that is a teaching away based on the case law. And I don't disagree. This is not one of the cases where they specifically say that this is a textual difference that advocates explicitly. But when you look at the way the Working proposed the combination, the way they say that they wanted to use the machine, in that context it renders the machine inoperable and wouldn't function. And I also would like to point out that a big part of Working's argument is the commission somehow ignored their evidence, and I also don't think that's supported. There are multiple portions of their expert testimony that they rely on in the brief, but the commission cited those in its own opinion. They rely on their expert's testimony, question and answer 253, 233, and 235 of their expert's witness statement. The commission's opinion cited all of those passages. Question 253 was cited at appendix page 40. 233 was cited at appendix page 40. And 235 was cited at appendix page 42. So the commission specifically looked at the testimony of Working puts forward in their brief. They analyzed it, and they found a conclusory. And this is a pure question of fact and motivation combined, and the commission relied properly on Caterpillar's expert over Working's expert. And based on the substantial evidence review, that's certainly within the province of the fact line or inappropriate here. Now just to touch briefly on the domestic industry analysis, I would like to point out that this is a situation where this is not a nascent industry where there was no activity by the patentee here. There were tens of thousands of man hours put in by Caterpillar. There were millions in labor and capital. It was all domestic activity that we're relying on, which is activity taking place in Minnesota and Illinois. And there's no dispute by Working that that effort was significant, that there was significant employment and labor capital, and that there was substantial investment in R&D. And it was all domestic, and that the investment was related to the patentee's articles. That's all that's required for domestic industry. And with that, the statute specifically says when a domestic industry exists. It exists when there's significant employment, labor, and capital, which Working does not dispute. A domestic industry exists when there is substantial investment in R&D. Working does not dispute that. By the plain language of the statute, Caterpillar satisfies that test, and there's no argument or evidence to the contrary. Your Honor, unless there is any further questions, I would yield the rest of my time. Okay. Thank you, Mr. McCann. Mr. Jaffray, you have a couple of minutes. Thank you, Your Honor. I would like just to go back to the Commission's point that they think that their test has a distinction between in the process of being established and existing. They pointed to the fact that they say, well, there has to be a likelihood that the industry requirement will be satisfied in the future. But they also require that you must demonstrate that they are taking the necessary tangible steps to establish an industry in the United States. Whenever there is a test, however, and the Commission actually applies that, it looks to the same exact evidence for both existing and in the process of being established. So, therefore, again, they're just collapsing the two, and the statute language requires a distinction. Turning to the obviousness point, Your Honor, the Commission and Caterpillar both say that there was some sort of credibility determination of their expert, Caterpillar's expert, being credited more than Virkin's expert. There is no such place in the actual Commission opinion stating any of that. And as to why there was a reason to combine it, the Virkin's expert provided exactly that at appendix 1353, questions 235. He says, A POSA would have been motivated to modify the Volpe machine with Ulrich and Boosley because it simply and conveniently accounts for the height adjustability provided by the lifting columns and allows the actuator to turn the clevis relative to the arm while still maintaining the relative position. So there is both a how and there is a why. And the Commission's plain language in their opinion states that Virkin did not state either how or why. As such, that is both a factual error, but it is also a legal error because it ignored the evidence that was available. It simply said there was no explanation of that when, in fact, there was. Therefore, for that reason, that determination needs to be reversed. Okay. Thank you, Mr. Joffrey. Thank all counsel. The case is submitted.